UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| DAMIEN A. SUBLETT, | ) |
| Plaintiff, | ) Civil No. 0: 14-32-HRW |
| v. | ) |
| DAVID GREEN, et al., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon the motion of the defendants for summary judgment. [D. E. No. 15] Plaintiff Damien A. Sublett has filed a response [D. E. No. 16], and the time within which to file a reply has passed. This matter is therefore ripe for decision.

**I**

When Sublett filed his complaint in this action on February 27, 2014, he was a prisoner confined at the Little Sandy Correctional Complex in Sandy Hook, Kentucky. Sublett's complaint asserted three distinct claims.

First, Sublett alleged that in late 2013, two Caucasian inmates who were members of a white supremacist gang had been ordered to kill him by their gang leaders at the Kentucky State Penitentiary. [D. E. No. 1, pp. 2-3] Sublett stated

1

that he told LSCC staff members - including "Correctional Treatment Officer" Blanton, Unit Administrator Terry Hall, and Deputy Warden of Security David Green - about the threat on October 24, 2013, and November 15, 2013. Nonetheless, on November 18, 2013, Blanton removed Sublett from the segregation unit, denied his request to be placed in protective custody, and returned him to the general population. Sublett alleges that while he was in the general population from November 18, 2013, to January 14, 2014, members of this white supremacist gang physically and sexually assaulted him on numerous occasions. Sublett further alleged that a "grievance aide" at LSCC told him that "protective custody is a classification status and is non-grievable pursuant to C.P.P. 14.6(c)(5)."[1] *Id.* at p. 4. Sublett claims that these three defendants violated the Eighth Amendment to the United States Constitution by failing to protect him from a known risk of harm at the hands of other inmates. [D. E. No. 1, p. 5]

Second, Sublett alleged that on February 9 and 26, 2014, he asked Chaplain Dan Hittepole to provide him with Kosher foods "to allow plaintiff to practice[] my religion Judaism..." Chaplain Hittepole advised him that his request could only be accommodated after he was released from the segregation unit and returned to

---

[1] Neither a grievance aide's legal conclusion that a claim is non-grievable, whether right or wrong, or the failure or refusal to provide a grievance form to the inmate [D. E. No. 22, pp. 6-7], excuses an inmate's statutory obligation to exhaust administrative remedies. *Cf. Barlorck v. Reece*, No. 4:05-CV-P38-M, 2007 WL 3120110, at *4-5, (W.D. Ky. Oct. 23, 2007) (*citing Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001).

2

the general population. [D. E. No. 1, p. 7] Sublett indicates that he filed an inmate grievance regarding this issue; however, KDOC's inmate grievance ombudsman has filed an affidavit indicating that there is no record of the Commissioner having made a final decision regarding that grievance prior to Sublett filing suit. [D. E. No. 15-5, p. 2] Sublett indicates that he has subsequently received a final denial of his grievance from the Commissioner. [D. E. No. 22, p. 11; 22-4, p. 1] Sublett claims that Hittepole's actions violated the First Amendment to the United States Constitution by interfering with the free exercise of his religion. [D. E. No. 1, p. 8]

Third, Sublett alleged that on or about February 24, 2014, Postal Technician Adam Bean opened a letter sent by this Court to Sublett outside of his presence. [D. E. No. 1, pp. 8-9] Sublett had no cases pending before this Court at that time. Sublett had mailed a § 1983 complaint to this Court for filing on January 19, 2014; however, because he wrote the wrong mailing address on the envelope, it was returned by the Postal Service as undeliverable on February 26, 2014 [R. 9-1, p. 4], and was marked "Return to Sender." [D. E. No. 1, p. 9] On March 4, 2014 - one week after he filed his complaint in this action - Sublett filed an inmate grievance regarding the opening of his mail. [D. E. No. 22, p. 9; 22-6, pp. 1-3] Sublett claims that Bean's actions violated the First Amendment to the United States Constitution. *Id.* Although Sublett does not explain the legal basis for his First

Amendment claim, the Court construes his claim to assert that this conduct interfered with his right to access the courts to seek redress for grievances.

On February 27, 2014, Sublett signed and mailed his complaint in this action pursuant to 42 U.S.C. § 1983. [D. E. No. 1] On the same day Sublett filed his complaint, he also sought a preliminary injunction directing LSCC officials to place him in protective custody for the same reasons set forth in his complaint. [D. E. No. 3] The Court denied that motion one day after it was filed in a March 5, 2014, Order, concluding that Sublett had failed to establish either a substantial likelihood of success on the merits or demonstrated that he would suffer irreparable harm absent the injunction. [D. E. No. 4] Four days later, Sublett filed a motion for a temporary restraining order on the same grounds set forth in his prior motion for injunctive relief. [D. E. No. 9] In his motion, Sublett indicated that he would remain in the segregation unit for another twelve days, until March 21, 2014. *Id.* at p. 6. Apparently prior to his return to the general population, Sublett was kept in segregation for the last days remaining before his transfer to another institution. [D. E. No. 14, p. 2] A few days later, Sublett was transferred to the Green River Correctional Complex. *Id.* at p. 1.

## II

A motion for summary judgment under Rule 56 challenges the viability of a plaintiff's claims by asserting that at least one essential element of that claim is not

4

supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that he should prevail as a matter of law, he is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need his own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least

one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## A

As a threshold matter, the defendants are correct that Sublett's transfer to the Green River Correctional Complex renders his request for an injunction to compel his placement in protective custody at LSCC moot. *Kotewa v. Westbrooks*, No. 1:12-CV-264, 2013 WL 1249227, at *6 (E.D. Tenn. March 27, 2013); *Leonard v. Mohr*, No. 2:11-cv-152, 2012 WL 423771, at *3 (S.D. Ohio Feb. 9, 2012); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

## B

Sublett's failure-to-protect claims against officers Blanton, Hall, and Green must be dismissed for failure to exhaust administrative remedies. A prisoner wishing to challenge the manner in which his criminal sentence is being carried out under federal law must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Here, Sublett acknowledges that he filed no inmate grievance regarding the events in question, but he contends that his failure to protect claims against these officers were non-grievable pursuant to Kentucky

Department of Corrections' Corrections Policies and Procedures ("CPP") 14.6(II)(C)(5).

When an inmate like Sublett requests that he be placed in protective custody, the CPP 18.15 requires a Classification Committee to decide whether to grant or deny that request. CPP 18.15(E) ("Inmates shall be placed in protective custody status as the result of a decision by the Classification Committee."). All classification decisions are made by the Classification Committee, not individual officers. *See id.*, CPP 18.1(E)(1), (7). Once the inmate requests protective custody, the inmate's Classification and Treatment Officer ("CTO") prepares the documents necessary to formally present the request. See CPP 18.1(D)(7). An investigation is then conducted and the results of the investigation are documented. Then the Classification Committee holds a hearing within seven days, at which time the inmate may present testimony in support of his request. CPP 18.15(F), (G), CPP 18.1(D)(4). Once the Classification Committee renders its decision, if the inmate disagrees with that decision, his only recourse is to appeal to the warden, but no further appeal is permitted. CPP 18.15(K). An inmate may not file a grievance regarding the Classification Committee's decision, as CPP 14.6(II)(C)(5) provides that a "[c]lassification decision or appeal of a classification decision including transfer denial, recommendation, or approval" are non-grievable issues under the KDOC's general inmate grievance procedure.

7

Whether read together or in isolation, KDOC's regulations plainly provide that a formal classification and transfer decision by the Classification Committee is "non-grievable." But it is equally clear that not every action taken by corrections officers regarding an inmate's security which could conceivably relate to or result in a subsequent transfer decision constitutes a non-grievable "classification decision." The KDOC has expressly vested the authority to make formal classification decisions with the Classification Committee. CPP 18.15(E); CPP 18.1(E)(1), (7). The regulations do permit an inmate to challenge a formal classification decision, but the inmate is limited to a single appeal to the warden using a special provision applicable only to classification decisions by the committee. CPP 18.15(K). The inmate may not use a normal inmate grievance to challenge this decision. CPP 14.6(II)(C)(5).

Importantly, the fact that the language of CPP 14.6(II)(C)(5) closely mimics the wording of CPP 18.15(K) indicates that it is directed to, and hence limited by, the latter provision. The former provision renders non-grievable any "[c]lassification decision or appeal of a classification decision including transfer denial, recommendation, or approval ..." In particular, the explicit reference to not only a classification decision, but also to an *appeal* of a classification decision, plainly refers back to the appeal mechanism provided by CPP 18.15(K). If CPP 14.6(II)(C)(5) were read more broadly to include any informal action by an officer

8

relating to an inmate's custody or housing, subsection (5)'s reference to an "appeal" of that action would be nonsensical. Simply put, CPP 14.6(II)(C)(5)'s language only makes sense as a direct reference to the formal classification and decision process set forth at length in CPP 18.15, which contains its own appeal mechanism. Therefore, CPP 14.6(II)(C)(5) renders non-grievable formal classification decisions by the Classification Committee, not other conduct by prison officials related to matters of security which the inmate feels should result in a different classification such as protective custody.

Here, Sublett's complaint did not challenge any decision by the Classification Committee regarding his custody level (which would be non-grievable), but the alleged conduct of three officers outside of the formal classification process. Sublett's allegations against each of the three defendants named in his failure-to-protect claim are similar, though not entirely identical. First, he alleges that he wrote Deputy Warden Green about the threat to his life in a letter he sent on November 15, 2013 (three days before his release from the segregation unit), but that Green responded that he could only request protective custody once he had been released from segregation. [D. E. No. 1, pp. 2-3] Green's response was consistent with, indeed required by, KDOC policy. CPP 18.15(D). Second, he alleges that he also wrote a letter to Unit Administrator Terry Hall on November 15, 2013, regarding the "hit" on him. [D. E. No. 1, p. 3]

9

However, Sublett makes no further allegations of any kind against officer Hall. Finally, Sublett alleges that he told CTO Blanton about the threat to his life on October 24, 2013, but that on November 18, 2013, he removed Sublett from his segregation cell. He further alleges that he immediately told Blanton that he was requesting protective custody at that time, but that Blanton told him that the protective custody "investigation starts now and it's over now, you're going to the yard, now, ..." [D. E. No. pp. 3, 4] In short, Sublett complains that Blanton's actions prevented him from filing a formal request protective custody, not that the Classification Committee itself denied a formal request for protective custody that he had actually made. Because Sublett complains of the actions of individual officers regarding his custody rather than of a specific formal classification decision made by the committee, his claims were not "non-grievable" under CPP 14.6(II)(C)(5), and he was required to exhaust those claims prior to bringing suit.

Sublett's response supports, rather than undermines, this conclusion. Sublett indicates that officers Blanton and Hall were actually members of the Classification Committee. As evidence, he points to a completed Protective Custody Form which indicates that he requested protective custody on September 8, 2013, and that he was placed in administrative segregation that day pending the completion of an investigation by Sergeant Gregory. On a September 9, 2013, a hearing was held by the Classification Committee which Hall signed as the

10

chairperson and Blanton apparently signed as a member. [D. E. No. 22-1, p. 1] Because the Classification Committee determined that Sublett did not need (or want) protective custody, the request was denied. *Id.* This form demonstrates that Hall and Blanton could and did follow the procedures required by CPP 18.15 when an inmate requested protective custody. Had Sublett wished to challenge the Classification Committee's formal decision on September 9, 2013, CPP 14.6(II)(C)(5) would have rendered the decision non-grievable and CPP 18.15(K) would have required him to appeal to the warden. By its terms, the nongrievability rule of CPP 14.6(II)(C)(5) refers to formal decisions by the Classification Committee, and not to the actions of officers generally or even to actions of Classification Committee members when taken informally or outside of the established process for application, investigation, hearing and decision of classification requests under CPP 18.15.

Sublett acknowledged that he did not file a grievance regarding his request for protective custody [D. E. No. 1, p. 4], and KDOC's records establish that he never filed any grievance alleging that any officer refused to allow him to request protective custody. [D. E. No. 15-5, p. 2] Because Sublett failed to exhaust available administrative remedies regarding his allegations against Green, Hall, and Blanton, his failure to protect claim must be dismissed.

# C

On the same day he filed his response in opposition to the defendants' motion for summary judgment, Sublett filed two motions to amend his complaint, which respectively contain additional factual allegations related to his existing failure to protect claim, and assert that claim against two additional defendants. [D. E. No. 20, 21] In Sublett's first motion, he sets forth additional details of the physical and sexual assaults he allegedly suffered once he was returned to the general population. [D. E. No. 20, pp. 1-2] In the second motion, Sublett seeks to add Lisa Bricky and Matthew Fyffe, whom he variously describes as "classification chairman" and "classification members," as defendants in this action, and alleges that Blanton informed each of them of the threats to Sublett's safety, but that each failed to take any action to place him in protective custody. [D. E. No. 21, pp. 2-3]

There are several reasons to deny both of Sublett's motions to amend his complaint. Federal Rule of Civil Procedure 15(a) embodies the notion that leave to amend should be freely given when justice requires, but "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). For instance, a court may deny leave to amend where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford*

*v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Sublett has offered no explanation whatsoever for his failure to include these new allegations in his original complaint, and it is plain that he failed to exercise diligence in bringing these facts earlier than in response to the defendants' motion for summary judgment. The assaults which he describes in his first motion to amend occurred in late 2013 and early 2014, shortly before the filing of the complaint, and given both their extreme nature and their direct relevance to his claims, there is simply no justifiable basis for Sublett to have left them out of his complaint. The same is true with respect to the identity of two individuals whom he now claims were also involved in the denial of his request for protective custody. This is particularly so with respect to Matthew Fyffe, whom Sublett identified by name in his original complaint yet did not make a defendant. [D. E. No. 1, p. 3] Finally, even if none of the foregoing was dispositive, the Court would deny the requested amendment as futile, as Sublett has admitted that he failed to exhaust his administrative remedies with respect to his claims. *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).

**D**

Sublett's second and third claims, relating to the denial of Kosher meals when he was confined in segregation and the opening of his mail, must also be dismissed for failure to exhaust administrative remedies. Sublett indicates that he filed an inmate grievance regarding his Kosher meals claim, but the record

establishes that it was not fully and finally exhausted, if at all, until after the complaint was filed. [D. E. No. 15-5, p. 2] Sublett also did not initiate, let alone complete, the inmate grievance process regarding the opening of his mail until after his complaint was filed. [D. E. No. 22-6, pp. 1-3]

The Sixth Circuit has made clear that a prisoner must fully and finally exhaust the prison's grievance process before filing suit:

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion a precondition to filing an action in federal court. ... The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.

*Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted). *See also Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Liggett v. Mansfield*, 2009 WL 1392604, at *2-3 (E.D. Tenn. May 15, 2009) ("A prisoner who files a grievance but does not appeal to the highest possible administrative level, does not exhaust available administrative remedies.") (*citing Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)).

Accordingly, **IT IS ORDERED** that:

1. Sublett's Motion for a Temporary Restraining Order [D. E. No. 9] is **DENIED AS MOOT**.

2. Sublett's motions to amend his complaint [D. E. Nos. 20, 21] are **DENIED**.

3. Defendants' motion for summary judgment [D. E. No. 15] is **GRANTED**.

4. Sublett's complaint [D. E. No. 1] is **DISMISSED**.

5. The Court will enter a judgment contemporaneously with this Order.

6. This matter is **STRICKEN** from the active docket of the Court.

This the 24th day of September, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge